No. 3-04-0944

_____

_____

filed July 19, 2006
APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006

_____

_____

| | | |
|---|---|---|
| MIDAMERICAN ENERGY CORPORATION, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | On Appeal From Orders of the Illinois Commerce Commission |
| | ) | in ICC Docket No. 03-0659 |
| ILLINOIS COMMERCE COMMISSION, THE ILLINOIS ATTORNEY GENERAL, AND THE CITIZENS UTILITY BOARD | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

_____

_____

JUSTICE McDADE delivered the opinion of the court:

_____

_____

Section 200.200 of the rules of practice for the Illinois Commerce Commission (Commission) (83 Ill. Adm. Code §200.220, as amended by 20 Ill. Reg. 10607 (eff. August 15, 1996)) governs declaratory rulings issued by the Commission. Here on appeal, petitioner claims that the Commission transformed its declaratory ruling proceeding into something akin to a "show cause" proceeding in which MidAmerican Energy Corporation (MEC) was allegedly "ordered to terminate a substantial portion of its business" without sufficient due process protections. Upon review, we find the Commission's action was a proper "declaratory ruling" and, therefore, dismiss MEC's appeal for lack of jurisdiction.

BACKGROUND

On October 22, 2003, petitioner, MEC filed with the Commission a verified petition for a declaratory ruling, requesting that the Commission answer three questions as to whether the Illinois Public Utilities Act (Act) (220 ILCS 5/1-101 *et seq.* (West 2002)) precludes MEC from selling natural gas at competitive rates both within and outside its traditional service area. The Citizens Utility Board (CUB) and the Attorney General of the State of Illinois (AG) petitioned to intervene. Both petitions to intervene were granted. CUB and the AG each opposed the findings sought by MEC. Pursuant to due notice, a status hearing was held before a duly authorized administrative law judge of the Commission on March 9, 2004. No other hearing was held in this matter.

On May 11, 2004, the Commission disposed of MEC's request for the declaratory ruling on the basis of the written submissions before it in accordance with section 200.220(h) (83 Ill. Adm. Code § 200.220(h), as amended by 20 Ill. Reg. 10607 (eff. August 15, 2996)). The May 11 order concluded that (1) MEC is prohibited by the Act from selling natural gas commodity at competitive prices in areas of Illinois where it does not provide regulated gas distribution services; and (2) MEC is prohibited by the Act from selling natural gas commodity at competitive prices in areas of Illinois where it provides regulated gas distribution services, absent approval under sections 7-102 and 9-102.1 of the Act (220 ILCS 5/7-102, 9-102.1 (West 2002)). Additionally, the May 11 order stated that "in light of the Commission's determinations in the prefatory portion of this Order, an appropriate remedy shall be determined in a subsequent docketed proceeding." This subsequent investigation was docketed as docket No. 04-0392.

On June 10, 2004, MEC filed an application for rehearing and request to revoke orders,

assigning numerous errors to the May 11 order. This motion was directed at both the challenged proceeding and the future hearing of docket No. 04-0392, It insisted that the Commission: (1) failed to address MEC's argument that the provision of commodity gas in the competitive market is not, and cannot be, a "public utility service"; (2) failed to recognize that it is the utility, and not the Commission, that decides what portion of the utility's property is dedicated to public use; (3) failed to recognize that the terms "heat" and "gas," as those terms are used in section 3-105 of the Act, cannot have the same meaning; (4) failed to recognize the fact that the Commission has previously allowed the activities of MEC's competitive natural gas sales divisions; (5) misinterpreted sections 3-115, 9-102, and 9-104 of the Act (220 ILCS 5/3-115, 9-102, 9-104 (West 2002)) to suggest that public utilities are prohibited from providing any service, product, or commodity without first obtaining Commission approval; (6) failed to hold the Commission proceeding in abeyance until the passing of Senate Bill 2525, which allegedly addressed the issues before the Commission; and (7) failed to provide MEC with basic due process protections. The application also sought to have sections 7-102, 7-205, 7-206 and 9-102.1 of the Act (220 ILCS 5/7-102, 7-205, 7-206, 9-102.1 (West 2002)) reexamined.

On June 29, 2004, the administrative law judge denied MEC's request as it related to docket No. 04-0392. However, the Commission granted rehearing as to this proceeding, docket No. 03-0659. On August 5, 2004, the administrative law judge issued a notice informing the parties of the scope of rehearing. The Commission determined that the scope of rehearing shall be limited to an evaluation of the applicability of section 7-102(E) of the Act (220 ILCS 5/7-102(E) (West 2002)) to MEC's competitive gas contracts within its traditional service area. Section 7-102(E) identifies the circumstances under which Commission approval of certain

3

transactions is not necessary. The notice directed MEC to indicate whether any facts exist that would trigger the exemptions provided for in section 7-102(E). MEC filed a response arguing that its competitive gas sales should not be subject to Commission approval under section 7-102(E) of the Act. MEC also filed a motion to stay the Commission proceeding pending final action by the General Assembly on Senate Bill 2525. MEC's motion to stay was subsequently denied on August 30, 2004.

On August 18, 2004, the administrative law judge issued another notice stating that any party wishing to question or challenge the facts alleged in MEC's response should do so as soon as possible. The notice also posed two questions for the parties to brief: (1) Is section 7-102(E) of the Act applicable to MEC's competitive gas contracts within its traditional service area, and (2) If the answer to the above question is "yes," should section 7-102(E) be construed to permit MEC to engage in competitive gas sales within its traditional service area?

On September 1, 2004, MEC filed a response to the August 18 notice. MEC's brief objected to the scope of the rehearing, alleging that the procedure initiated an improper "fact-finding" expedition during the course of a declaratory ruling proceeding. MEC also contended that the limited scope of the rehearing was improper. MEC renewed its contention that its competitive gas sales should not be subject to Commission approval under section 7-102(E) of the Act.

On September 3, 2004, MEC filed a petition for guidance regarding the notices. MEC sought guidance concerning the "manner and forum in which MEC may obtain a full and fair opportunity to present legal and factual arguments concerning the legal and factual issues that have arisen" throughout the proceeding. MEC argued that (1) the Commission proceeding

4

exceeded the parameters of a declaratory ruling proceeding; (2) the Commission's notice improperly contemplated an evidentiary investigation rather than a declaratory ruling; and (3) MEC should be granted due process rights and be allowed to present a full and complete record prior to a final decision in the proceeding. This petition was subsequently denied on September 28, 2004.

On November 10, 2004, the Commission issued a final order on rehearing. The Commission concluded that although the regulatory exemption in section 7-102(E) of the Act applies to MEC's competitive gas contracts within its traditional service area, MEC was prohibited from selling natural gas at competitive prices within its traditional service area absent approval under section 9-102.1 and any other applicable provision of the Act. The Commission refused to revisit the conclusion in its May 11 order, which found the statute prohibited MEC from selling natural gas in the competitive market outside of its traditional service area.

On November 19, 2004, Senate Bill 2525 was passed into law as Public Act 93-1052 (Pub. Act 93-1052, eff. January 1, 2005). The Public Act was codified as section 7-210 of the Act (220 ILCS 5/7-210 (West 2002)). On December 15, 2004, MEC filed its petition for review of the Commission's May 11 and November 10 orders. This appeal followed.

ANALYSIS

Jurisdiction

The Commission has challenged our jurisdiction to consider MEC's appeal from its declaratory ruling. In support of its contention that we do not have jurisdiction, the Commission cites section 5-150(a) of the Illinois Administrative Procedure Act (5 ILCS 100/5-150(a) (West 2002)), and §200.220(I) of the Commission's rules of practice (83 Ill. Adm. Code § 200.220 (I),

5

as amended by 20 Ill. Reg. 10607 (eff. August 15, 2996)).  Under both sections, declaratory

rulings are not appealable. 5 ILCS 100/5-150(a) (West 2002); 83 Ill. Adm. Code § 200.220(I), as

amended by 20 Ill. Reg. 10607 (eff. August 15, 1996).

Section 5-150(a) of the Administrative Procedure Act provides:

"Each agency may in its discretion provide by rule for the

filing and prompt disposition of petitions or requests for declaratory

rulings as to the applicability to the person presenting the petition or

request of any statutory provision enforced by the agency or of any

rule of the agency.  Declaratory rulings shall not be appealable." 5

ILCS 100/5-150(a) (West 2002).

Section 200.220(I) of the rules of practice for the Commission provides:

"Declaratory rulings shall not be appealable." 83 Ill. Adm.

Code § 200.220(I), as amended by 20 Ill. Reg. 10607 (eff. August 15,

1996).

The Illinois Supreme Court in *Greer v. Illinois Housing Development Authority*, 122 Ill.

2d 462, 497-98, 524 N.E.2d 561, 577 (1988), set forth the standard to be applied in examining

whether an agency decision is subject to judicial review on appeal.  The court held that most

agency actions are presumed reviewable in the absence of some express statutory prohibition of

review, or at least in the absence of language committing the decision to unreviewable agency

discretion.  *Greer*, 122 Ill. 2d at 497, 524 N.E.2d at 577.  "Whether, and to what extent, a

relevant statute precludes judicial review is to be determined by its express language, the

structure of the statutory scheme, its objectives, its legislative history, and the nature of the

6

administrative action involved." *Greer*, 122 Ill. 2d at 497-98, 524 N.E.2d at 577. In applying

this standard, the court determined that the decision of the Illinois Housing Development

Authority to grant mortgage financing was subject to judicial review. *Greer*, 122 Ill. 2d at 498,

524 N.E.2d at 577. The court relied upon the general language of the Illinois Housing

Development Act (Ill. Rev. Stat. 1985, ch. 67½, par. 301) and the fact that the Act lacked any

express language precluding judicial review. *Greer*, 122 Ill. 2d at 498, 524 N.E.2d at 577.

Unlike the Illinois Housing Development Act in *Greer*, the Illinois Administrative Code

explicitly states that "[d]eclaratory rulings shall not be appealable." 83 Ill. Adm. Code

§200.220(I), as amended by 20 Ill. Reg. 10607 (eff. August 15, 1996). It is our duty as officers

of the court to respect this expression of legislative intent. Such an interpretation is also

consistent with the holding in *Greer* that judicial review is determined by the express language

of a statute. Thus, the central question to the jurisdictional challenge here on appeal is whether

the Commission's action was a proper "declaratory ruling" under section 200.220 of the Illinois

Administrative Code.

Declaratory Ruling

Section 200.220 of rules of practice for the Illinois Commerce Commission states as

follows:

"(a) When requested by the affected person, the Commission

may in its sole discretion issue a declaratory ruling with respect to:

(1) the applicability of any statutory provision

enforced by the Commission or of any Commission

rule to the person(s) requesting a declaratory ruling;

7

and

> (2) whether the person's compliance with a federal rule will be accepted as compliance with a similar Commission rule,

> * * *

> (h) The Commission may in its sole discretion dispose of a request for a declaratory ruling solely on the basis of the written submissions filed before it." 83 Ill. Adm. Code §§200.220(a), (h), as amended by 20 Ill. Reg. 10607 (eff. August 15, 1996).

Here on appeal, MEC claims that the Commission's action transformed its declaratory ruling proceeding into something akin to a "show cause" proceeding in which MEC was allegedly "ordered to terminate a substantial portion of its business" without sufficient due process protections. A review of MEC's proposed questions and the Commission's answers to those questions shows MEC's claim to be without merit. Specifically, MEC's two propounded questions asked:

> "(1) Does any provision of the Illinois Public Utilities Act preclude a division of MidAmerican from selling natural gas commodity at competitive prices in areas of the State of Illinois where MidAmerican does not provide regulated gas distribution services?

> (2) Does any provision of the Act preclude a division of MidAmerican from selling natural gas commodity at competitive

8

prices in areas of the State of Illinois where MidAmerican does provide regulated gas distribution service?"

Upon exercising its authority under §200.200(a), the Commission concluded:

"(1) That MidAmerican Energy Company is prohibited by the Act, 220 ILCS 5/1-101 *et. seq*., from selling natural gas commodity at competitive prices in areas of Illinois where it does not provide regulated gas distribution services.

(2) That MidAmerican Energy Company is prohibited by the Act from selling natural gas commodity at competitive prices in areas of Illinois where it provides regulated gas distribution services, absent approval under sections 7-102 and section 9-102.1 of the Act."

The Commission's answers basically parrot MEC's questions. The only apparent difference between the two is that the Commission answered MEC's questions in the negative. In filing its petition, MEC knew the Commission had the authority to decide MEC's right to sell gas at competitive prices under the express language of section 200.220(a). MEC's sole purpose for filing the petition was to "seek guidance" as to whether MEC could engage in such activities. In exercising its authority under section 200.220, the Commission determined it could not. MEC makes much of the fact that the Commission came to this conclusion without the benefit of an evidentiary record or hearing. MEC asserts that the lack of an evidentiary record or hearing violates due process. MEC, however, in making this argument, ignores the fact that section 200.220 does not entitle MEC to an evidentiary hearing. Again, "[t]he Commission may in its sole discretion dispose of a request for a declaratory ruling solely on the basis of the written

9

submissions filed before it." 83 Ill. Adm. Code § 200.220(h), as amended by 20 Ill. Reg. 10607 (eff. August 15, 1996).

MEC also takes issue with the scope of the rehearing. Specifically, MEC asserts that the Commission improperly engaged in a selective "fact-finding" process as evidenced by the restrictive scope of the rehearing. MEC argues that the Commission's selective fact-finding exceeded the scope of its declaratory ruling petition. We find no merit in this claim. MEC's assertion that the Commission engaged in a selective fact-finding process is completely unfounded. MEC's petition was an open-ended request to the Commission to decide whether "any provision of the Act" precludes a division of MEC from providing gas service within or outside its certified service area. The Commission, having ruled unfavorably to MEC on its request, granted MEC the additional opportunity to supplement its filing with regard to whether section 7-102(E) of the Public Utilities Act should be construed to permit MEC to engage in competitive gas sales within its traditional service area. This action did not subject MEC to an improper fact-finding expedition but, instead, constituted an additional opportunity for MEC to supplement its filing with regard to the applicability of section 7-102(E). Furthermore, MEC cites no authority supporting the proposition that due process considerations compel the rehearing of every issue before the Commission. In fact, the Commission would have been acting well within its authority if it had simply denied MEC's petition for rehearing entirely.

MEC also contends that the Commission's action violates due process in that it requires MEC to "cease providing competitive gas service to Illinois customers." We find no support in the record for this argument. MEC has failed to cite any language in either of the Commission's orders, May 11 or November 10, which instructed MEC to cease and desist its competitive gas

service.  In fact, the Commission stated:

> "To determine the appropriate remedies and/or sanctions within the Commission's authority to implement, including the treatment of MEC's existing competitive customers, the Commission will initiate another proceeding.  In the meantime, MEC may seek prospective approval of its competitive gas contracts with consumers within its service area under Sections 7-102 and 9-102.1 of the Act."

This language clearly does not support MEC's assertion that it was ordered to "terminate its competitive gas service to Illinois customers."  MEC asked the Commission whether it was prohibited under the Public Utilities Act from selling gas at competitive prices.  The Commission merely answered the question it was asked.  It did not order MEC to terminate its existing contracts.  Instead, the Commission allowed MEC the opportunity to seek the Commission's approval of such contracts.

Lastly, MEC contends that the Commission's action in ordering a separate proceeding to determine the appropriate remedies and/or sanctions to impose upon MEC violates due process.  Again, MEC asserts that this action improperly asks the parties to assume the role of fact-finder.  MEC's argument is misguided.  In determining that MEC is prohibited from selling gas at competitive prices, the Commission ordered that a subsequent docket proceeding, No. 04-0392, be held in order to determine the appropriate remedies and/or sanctions to impose upon MEC.  The Commission also found that the parties were not allowed to relitigate any of the conclusions found in the declaratory ruling proceedings.  The Commission's action ordering this subsequent docket proceeding on possible actions consistent with its declaratory findings has no bearing on

11

this appeal. Here, the Commission answered the questions posed by MEC in its petition for declaratory ruling. The Commission then ordered that another docket be established in order to deal with any subsequent remedies/sanction issues. In the end, MEC's issues with the "Initiating Order" in docket No. 04-0392, must be addressed in that docket and cannot be used to undermine the Commission's legal conclusions in the instant docket. Accordingly, we find that the Commission's action was a proper "declaratory ruling" under section 200.220.

MEC calls our attention to the holding in *Resource Technology Corp. v. Commonwealth Edison Co.*, 343 Ill. App. 3d 36, 45, 795 N.E.2d 936, 942 (2003), which it construes to "explicitly permit appellate review of declaratory rulings." MEC misinterprets the court's analysis. Instead of holding that declaratory rulings are subject to judicial review, the court in *Resource Technology* found that the Commission's order was not a declaratory ruling within the meaning of section 200.220. As a result, the court found that the Commission's order was subject to judicial review. We in no way read *Resource Technology* to permit appellate review of declaratory rulings.

CONCLUSION

Because we have already found that the Commission's action in this case was in fact a proper declaratory ruling, we must give effect to the General Assembly's expression that "[d]eclaratory rulings shall not be appealable." 83 Ill. Adm. Code §200.220(I), as amended by 20 Ill. Reg. 10607 (eff. August 15, 1996). We therefore conclude that dismissal of this appeal is required by the plain language of section 200.220(I) (83 Ill. Adm. Code § 200.220(I), as amended by 20 Ill. Reg. 10607 (eff. August 15, 1996)) and section 5-150(a) of the Illinois Administrative Procedure Act (5 ILCS 100/5-150(a) (West 2002)). Moreover, it can be

12

reasonably inferred, due to the express language of section 200.220(I), that MEC knew at the time it invoked this administrative proceeding that the Commission's decision answering MEC's question as to whether it had the authority to sell gas at competitive prices was not appealable.

For the reasons stated above, we dismiss MEC's appeal for want of jurisdiction.

Appeal dismissed.

LYTTON and HOLDRIDGE, concur.