# Illinois Official Reports

## Appellate Court

*Securus Technologies, Inc. v. Illinois Commerce Comm'n*,
2014 IL App (1st) 131716

| | |
|---|---|
| Appellate Court Caption | SECURUS TECHNOLOGIES, INC., Petitioner, v. ILLINOIS COMMERCE COMMISSION and CONSOLIDATED COMMUNI-CATIONS ENTERPRISE SERVICES, INC., d/b/a Consolidated Communications Public Services, Respondents. |
| District & No. | First District, Sixth Division<br>Docket No. 1-13-1716 |
| Filed | May 16, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The orders entered by the Illinois Commerce Commission granting respondent communication company's petition for a declaratory ruling concerning the special telephone calling services provided for inmates of corrections facilities operated by the Department of Corrections were vacated due to the Commission's lack of jurisdiction, since respondent's petition was related to its loss of a bid for the contract to provide the services, but respondent was not an "affected person" for purposes of being entitled to a declaratory ruling, respondent failed to state that an actual controversy or uncertainty existed, especially when the award of the contract was moot, and the orders were outside the Commission's authority under the Administrative Procedure Act and its implementing regulations. |
| Decision Under Review | Petition for review of orders of Illinois Commerce Commission, No. 12-0413. |
| Judgment | Vacated. |

Counsel on
Appeal

Michael J. Hayes and Dawn L. Johnson, both of K&L Gates LLP, of Chicago, for petitioner.

John E. Stevenson, of Freeborn & Peters LLP, of Springfield, for respondent Illinois Commerce Commission.

Panel

JUSTICE REYES delivered the judgment of the court, with opinion. Presiding Justice Rochford and Justice Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1        Petitioner Securus Technologies, Inc. (Securus), directly appeals to this court from orders of the respondent Illinois Commerce Commission (Commission) entered upon a verified petition for a declaratory ruling filed with the Commission by respondent Consolidated Communications Enterprise Services, Inc. (Consolidated),[1] as well as an order denying rehearing on the matter. Securus argues: (1) the Commission lacked jurisdiction to enter the orders; (2) the Commission's orders violate Illinois law; (3) the Commission's procedures prior to entry of the orders violated Sercurus's right to due process of law; and (4) the Commission's findings were against the manifest weight of the evidence. The Commission not only takes the contrary position to all of the arguments raised by Securus, but also argues this court lacks jurisdiction to hear this appeal. For the following reasons, we conclude this court has jurisdiction to hear the appeal, the Commission lacked jurisdiction to enter the orders at issue, and the Commission's orders must be vacated.

¶ 2                                BACKGROUND

¶ 3        The record on appeal discloses the following facts. On July 3, 2012, Consolidated filed a verified petition for declaratory ruling from the Commission, pursuant to section 5-150 of the Illinois Administrative Procedure Act (5 ILCS 100/5-150 (West 2012)) and section 200.220(a)(1) of the Commission's Rules of Practice (83 Ill. Adm. Code 200.220(a)(1) (1996)). In the petition, Consolidated identified itself as a corporation engaged in the provision of telecommunications services and other telecommunications-related businesses in Illinois. The petition alleged Consolidated "provide[d] telephone calling services accessible by inmates of corrections facilities operated by the Illinois Department of Corrections ('IDOC'), so that inmates may communicate with members of the general public." Consolidated provided these services through equipment placed in the restricted areas of the IDOC facilities allowing inmates to place operator-assisted collect calls. The charges for the

_____

[1]Consolidated is not a party to this appeal.

- 2 -

telephone calls are billed to the members of the public who have accepted responsibility to pay for the calls. IDOC allows only one such service provider at each corrections facility.

¶ 4　　Consolidated sought a declaratory ruling from the Commission "as to whether a person or entity, such as Consolidated," is providing "operator services" and thus is an "operator services provider[ ]" under section 13-901 of the Public Utilities Act (220 ILCS 5/13-901 (West 2012)) and section 770.10 of the Commission's regulations (83 Ill. Adm. Code 770.10 (1994)). Consolidated also sought a declaratory ruling that such operator services providers were thus subject to the requirements of not only section 13-901 of the Public Utilities Act, but also sections 770.20(a) and 770.40(c) and (e) of the Commission's regulations (83 Ill. Adm. Code 770.20(a), 770.40(c), (e) (1994)), which set standards of service and maximum rates for telephone calls.

¶ 5　　Consolidated asserted in its petition that the request for a declaratory ruling was prompted by an actual controversy. In support of the petition's assertion that an actual controversy existed, Consolidated alleged it had recently submitted a bid to the Illinois Department of Central Management Services (CMS) on a contract to provide services described in the petition to certain IDOC corrections facilities. The contract solicitation required bidders to submit the rates they would charge and the percent of revenues they would pay to IDOC as a commission. Consolidated, believing itself to be an operator services provider, specified it would charge no more than the maximum rates established by sections 770.40(c) and (e) of the Commission's regulations. CMS awarded the contract to a bidder (the record establishes this bidder was Securus) that represented it would charge rates above those maximum rates. On May 31, 2012, Consolidated protested the contract award. The chief procurement officer of CMS (CPO) denied the protest, based on his review of prior orders issued by the Commission and a review of the Commission's regulations.

¶ 6　　Consolidated further asserted in the petition that Consolidated needed to know "whether, in the future, it would be acting in violation of a Commission regulation if it were to charge higher rates than those established pursuant to sections 770.40(c) and (e) to members of the public in connection with the provision of the inmate telephone calling services described" in the petition.

¶ 7　　Consolidated attached to its petition a copy of the CPO's June 25, 2012, decision rejecting Consolidated's protest as to the contract awarded to Securus. The CPO determined the key inquiry is whether the services at issue were within the Commission's regulatory jurisdiction and subject to the restrictions of section 770.40, as the award would be required to be rescinded if the services were not exempt. The CPO relied on two prior orders issued by the Commission, *Inmate Communications Corp.*, Ill. Com. Comm'n No. 96-0131 (June 5, 1996) (*Inmate Communications*), and *Infinity Networks, Inc.*, Ill. Com. Comm'n No. 05-0429 (Oct. 19, 2005) (*Infinity Networks*), in which the Commission ruled: (1) telecommunications providers that do not locate pay telephones in public areas are not public utilities and are not subject to the Commission's regulation with respect to such services; (2) prisoners are not members of the public and thus pay telephones for inmate-only use are not a public utility or telecommunications carrier under section 13-202 of the Public Utilities Act; and (3) operator services associated with the provision on nonpublic telephones in correctional institutions were exempt from the operator services requirements of Part 770 of Title 83 of the Illinois Administrative Code.

¶ 8    The CPO noted the only opposing material Consolidated presented was an email from Kathy Stewart, who was employed by the Commission as an "Engineering Analyst IV." The CPO observed he was not provided the question Consolidated presented to Stewart or any explanation for why Stewart was requested to provide a legal opinion. This "conundrum" prompted the CPO to contact the Commission's general counsel's office, which replied the opinion of any single employee was not the opinion of the Commission, and explained there is a formal mechanism called a declaratory ruling which allows the Commission to issue opinions regarding the applicability of its rules. Thus, the CPO concluded the Commission's prior orders were determinative and the services at issue were not subject to regulation.

¶ 9    On July 30, 2012, Securus transmitted a letter regarding Consolidated's petition for a declaratory ruling to an administrative law judge (ALJ) at the Commission. The letter requested the summary dismissal of Consolidated's petition, arguing: (1) after the CPO rejected Consolidated's protest of the contract award, Consolidated filed a lawsuit in the circuit court of Sangamon County regarding the contract bid dispute, which Consolidated failed to disclose in its verified petition; (2) the Commission had already ruled upon the issue raised in Consolidated's petition; and (3) Consolidated was not an "affected person" with standing to request a declaratory ruling from the Commission. Securus attached a copy of Consolidated's July 3, 2012, complaint filed in the circuit court against CMS, the CPO, Securus and other parties, challenging the award of the contract to Securus. The ALJ recorded the letter as an *ex parte* communication from an interested party.

¶ 10    On July 31, 2012, during a prehearing conference on Consolidated's petition, the ALJ informed counsel for Securus they would be required to file a petition to intervene if they wished to participate in the proceedings on Consolidated's petition.

¶ 11    On August 30, 2012, Securus filed a verified petition to intervene and be treated as a party in the proceedings on Consolidated's petition for a declaratory ruling. Securus asserted its interest was based on its then-ongoing negotiation of the terms of the contract Securus was awarded to provide inmate pay telephone services at IDOC facilities. Securus proffered appearances of counsel and attached a copy of its July 30, 2012, letter to the ALJ. On September 14, 2012, the ALJ granted Securus's petition to intervene.

¶ 12    On August 31, 2012, the Commission's staff filed a response in support of Consolidated's verified petition for a declaratory ruling. The response, prepared by Stewart, stated it would not respond directly to the points raised by Securus, because Securus had yet to file a petition to intervene when the response was drafted. The response, however, asserted Consolidated's litigation of the contract bid in the circuit court was immaterial to the issues raised by the petition. The Commission's staff also argued the Commission should revisit its prior decision in *Inmate Communications*, noting: (1) the Commission's orders are not *res judicata* on the Commission; (2) the relevant portion of the order was *dicta*; and (3) the Commission staff's opinion was that the services at issue should be subject to regulation to protect members of the general public who pay for telephone calls from inmates. The Commission's staff further asserted Consolidated was an "affected person" insofar as the rate regulation affected not only Consolidated's past contract bid, but also future bids.

¶ 13    On September 7, 2012, Consolidated filed a verified reply in support of its verified petition for a declaratory ruling. Responding to Securus, Consolidated observed it had filed an amended complaint in the circuit court alleging numerous flaws in the bid proposal submitted by Securus. Consolidated asserted the controversy prompting its petition was the

- 4 -

award of the contract to Securus, which Consolidated disclosed in its verified petition. Consolidated also asserted its litigation was not relevant to the Commission's resolution of the question in the petition for a declaratory ruling. Consolidated further argued the Commission should revisit its prior decisions in *Inmate Communications* and *Infinity Networks*. Consolidated additionally argued it was an "affected person" for the purpose of seeking a declaratory ruling because the contract award was in litigation and not final, and as the CPO indicated in his decision, the award must be rescinded if the rate regulations applied to the services at issue in the contract. Consolidated reiterated it required further guidance regarding whether it would be violating a Commission regulation in the future if it charged rates higher than those established by sections 770.40(c) and (e) of the Commission's regulations. In addition, Consolidated asserted Securus had failed to challenge any of the underlying facts or policy considerations asserted by Consolidated and the Commission's staff in the proceedings.

¶ 14    On October 23, 2012, the ALJ issued a proposed order recommending Consolidated's petition for a declaratory ruling be granted. Securus filed a motion requesting briefing of exceptions to the proposed order be deferred, due to outstanding discovery requests. On November 13, 2012, the ALJ denied Securus's motion to defer briefing. Securus sought interlocutory review of the ALJ's decision. On December 19, 2012, the Commission denied interlocutory review.

¶ 15    On November 16, 2012, Securus filed its brief of exceptions to the ALJ's proposed order. Securus again argued Consolidated is not an "affected person" entitled to request a declaratory ruling. Securus observed Consolidated's lawsuit was dismissed by the circuit court on the basis Consolidated lacked standing to sue.[2] Moreover, Securus and IDOC entered into their contract and the transition from Consolidated to Securus had already begun. Thus, Securus concluded, granting the petition would have no bearing on the litigation or IDOC's contract with Securus. In addition, Securus argued Consolidated could not seek an advisory opinion from the Commission regarding unspecified future activities.

¶ 16    Securus also argued the proposed order was contrary to the Commission's prior orders on the subject. Securus disputed the Commission staff's assertion that a lack of regulation resulted in excessive and exorbitant prices for inmate telephone services, arguing the additional technological requirements for providing inmate-only telephone service, which are not required for ordinary collect telephone calls, accounted for the differences in pricing the telephone calls. Securus additionally sought a hearing and oral argument on the matters raised in the proposed order.

¶ 17    On November 20, 2012, the Commission's staff moved to strike the portions of the brief of exceptions filed by Securus referring to facts outside the record of the proceedings on Consolidated's petition. On December 18, 2012, the ALJ granted the Commission staff's motion, ruling Securus had not timely filed or sought other relief regarding the Commission staff's response. The ALJ also observed that in contested cases, parties must be notified and given the opportunity to contest materials which may be the subject of administrative notice

---

[2]A copy of the October 24, 2012, circuit court order dismissing Consolidated's complaint included in the record indicates the complaint was dismissed based not only on Consolidated's lack of standing to sue, but also on the ground of sovereign immunity.

(see 5 ILCS 110/10-40 (West 2012)). The ALJ did not specifically state this matter was a contested case.

¶ 18    On December 21, 2012, Consolidated filed its reply to the exceptions to the proposed order. Consolidated argued it was an "affected person" entitled to request a declaratory ruling. Consolidated noted it had previously provided the services at issue in its petition. Consolidated also noted it had appealed the dismissal of its lawsuit by the circuit court and filed a complaint with the Illinois Procurement Policy Board. Consolidated distinguished case law cited by Securus on the issue of whether an order from the Commission would affect the litigation or the contract between IDOC and Securus.

¶ 19    Consolidated's reply also argued services offered to members of the general public are operator services subject to the Commission's rate regulation. Consolidated maintained Securus's reliance on Part 771 of the Commission's regulations was inapposite. Consolidated further argued that the Commission's prior orders generally addressed whether inmate pay telephone services providers were "telecommunications carriers" under the Public Utilities Act, not whether such providers were "operator services providers." In Consolidated's view, the Commission's decision in *Inmate Communications* was the only order addressing the precise issue presented in Consolidated's petition and should not be followed.

¶ 20    On January 9, 2013, the Commission denied Securus's request for oral argument on the proposed order. On January 18, 2013, Securus sought interlocutory review of the ALJ's ruling striking portions of its brief of exceptions. On January 29, 2013, the Commission denied interlocutory review of the ruling. On January 31, 2013, Securus renewed its request for a hearing on the proposed order.

¶ 21    On February 14, 2013, Consolidated's petition was placed on the Commission's regular meeting agenda. During the public comment portion of the meeting, Securus's counsel argued there would be detrimental effects if the Commission declared inmate pay telephone services subject to Part 770 of the Commission's regulations. At the request of a commissioner, the Commission held the matter over, as there was no deadline for taking action on the petition.

¶ 22    On March 6, 2013, the petition was placed on the Commission's bench session agenda. During the public comment portion of the meeting, IDOC's deputy chief of operations spoke regarding the need to restrict inmate telephone service to a single provider to facilitate the monitoring and regulation of such telephone calls to protect the safety and security of IDOC facilities and personnel. When Consolidated's petition was called for discussion during the public utility portion of the meeting, a commissioner requested the ALJ to discuss her conclusions in the matter. The ALJ explained the issues raised by Consolidated's petition and observed the Commission's prior orders contained no factual basis or discussion of its findings regarding inmate telephone service. A commissioner inquired of the ALJ whether the proposed order would be limited to this case and would have no precedential value moving forward should someone attempt to cite it as authority in the future. The ALJ responded the proposed order would apply to inmate calling services unless someone filed another petition establishing the underlying facts were different. The Commission's chairman indicated the matter would be held for later disposition.

¶ 23    On April 8, 2013, Securus, pursuant to section 200.190 of the Commission's Rules of Practice (83 Ill. Adm. Code 200.190 (1996)), filed a verified motion to dismiss Consolidated's petition as moot. Securus asserted that as of March 28, 2013, all telephone

services for inmates at IDOC facilities were transitioned to Securus. Accordingly, Consolidated was no longer providing the services which were the subject of Consolidated's petition. Securus relied upon prior Commission orders which declined to issue declaratory rulings where the Commission's regulations did not apply to the requester and where the petitioner failed to establish business activities which would be affected by a declaratory ruling.

¶ 24 On April 9, 2013, without ruling on Securus's motion to dismiss, the Commission entered a 26-page order granting Consolidated's petition for a declaratory ruling. The order is not identical to the ALJ's proposed order, but similar in substance. The Commission found Consolidated was an "affected person" entitled to seek a declaratory ruling, based on the rejection of its contract bid and subsequent litigation as to the denial of the bid protest and the award of the contract to Securus, as well as its request for future guidance regarding the applicability of the rate regulation. The Commission also found it had sufficient information to determine Consolidated's request was within the parameters of the Commission's authority for issuance of a declaratory ruling and that an actual controversy existed.

¶ 25 The Commission's order adopted the Commission staff's argument that, as a matter of public policy, the operator services within inmate calling services should be regulated to protect members of the public who engage in telephone calls with inmates. The Commission's order did not discuss its prior decisions, other than to note the prior orders are not *res judicata* and the record here disclosed the nature of the operator services included in inmate calling services. Accordingly, the Commission ordered "that an entity providing telephone calling services accessible to inmates of correctional facilities that include operator services as described herein is subject to [s]ection 13-901 of the [Public Utilities] Act and [s]ections 770.20(a) and 770.40 of Part 770."

¶ 26 On April 24, 2013, Securus filed a verified petition for rehearing. On April 25, 2013, the ALJ issued a memorandum recommending the Commission deny rehearing. On May 1, 2013, the Commission denied the petition for rehearing and served the parties electronically the following day. On June 4, 2013, Securus filed a notice of appeal to this court.

¶ 27 ANALYSIS

¶ 28 On appeal, Securus argues: (1) the Commission lacked jurisdiction to enter the orders; (2) the Commission's orders violate Illinois law; (3) the Commission's procedures prior to entry of the orders violated Sercurus's right to due process of law; and (4) the Commission's findings were against the manifest weight of the evidence. The Commission not only takes the contrary position to all of Securus's arguments, but also argues this court lacks jurisdiction to hear this appeal, because section 5-150(a) of the Administrative Procedure Act (5 ILCS 100/5-150(a) (West 2012)) and section 200.220(i) of the Commission's Rules of Practice (83 Ill. Adm. Code 200.220(i) (1996)) provide that declaratory rulings are not appealable. A reviewing court has a duty to ascertain whether it has jurisdiction before addressing any issues on appeal. *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009).

¶ 29 The Commission's authority to issue declaratory rulings is derived from section 5-150(a) of the Administrative Procedure Act and section 200.220(i) of the Commission's Rules of Practice. Section 5-150(a) of the Administrative Procedure Act provides:

"Each agency may in its discretion provide by rule for the filing and prompt disposition of petitions or requests for declaratory rulings as to the applicability to the person presenting the petition or request of any statutory provision enforced by the agency or of any rule of the agency. Declaratory rulings shall not be appealable." 5 ILCS 100/5-150(a) (West 2012).

Pursuant to section 5-150(a), the Commission promulgated section 200.220 of the Rules of Practice for the Commission, which provides:

"a) When requested by the affected person, the Commission may in its sole discretion issue a declaratory ruling with respect to:

1) the applicability of any statutory provision enforced by the Commission or of any Commission rule to the person(s) requesting a declaratory ruling[.]
***

b) A request for a declaratory ruling:

1) shall be captioned as such and shall contain a complete statement of the facts and grounds prompting the request, including a full disclosure of the requester's interest; a clear, concise statement of the controversy or uncertainty that is the subject of the request; the requester's proposed resolution of that controversy or uncertainty; and citations to any statutes, rules, orders or other authorities involved[.]
* * *

i) Declaratory rulings shall not be appealable." 83 Ill. Adm. Code 200.220(a)(1), (b)(1), (i) (1996).

"It is our duty as officers of the court to respect this expression of legislative intent." *MidAmerican Energy Corp. v. Illinois Commerce Comm'n*, 367 Ill. App. 3d 163, 167 (2006). In this case, the Commission found it had sufficient information to determine Consolidated's request was within the parameters of the Commission's authority for issuance of a declaratory ruling, an actual controversy existed, and Consolidated was an "affected person" entitled to seek a declaratory ruling. The jurisdictional issue here thus turns on whether the Commission's order was a declaratory ruling under section 200.220.

¶ 30    Section 200.220 provides that a declaratory ruling regarding a "controversy or uncertainty" be requested by an "affected person." 83 Ill. Adm. Code 200.220 (1996). These self-imposed limitations by the Commission do not appear in the text of section 5-150(a) of the Administrative Procedure Act, and thus the Commission's determination of what is a "controversy or uncertainty" and who is an "affected person" arguably could be characterized as the Commission's interpretations of its own regulation. This court has stated that "[a] court may overturn the Commission's interpretation of its own rules if its construction is clearly erroneous, arbitrary, or unreasonable." *Ameren Illinois Co. v. Illinois Commerce Comm'n*, 2012 IL App (4th) 100962, ¶ 61. Yet we stated this rule in the context of the Commission's interpretation of a statute it is charged with administering and enforcing. See *id*. Section 200.220 is a Commission regulation promulgated pursuant to the Administrative Procedure Act, rather than the Public Utilities Act. The Commission's interpretation of a statute it is not charged with administering and enforcing generally is not entitled to any deference and is reviewed *de novo*. *Ameren Illinois Co.*, 2012 IL App (4th) 100962, ¶ 62 (citing *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 204 (1989)). Furthermore, even in cases where some deference is to be

afforded to an administrative agency's statutory interpretations, "our supreme court has consistently indicated that '[a]n agency's interpretation is not binding, however, and will be rejected when it is erroneous.' " *AT&T Teleholdings, Inc. v. Department of Revenue*, 2012 IL App (1st) 113053, ¶ 32 (quoting *Shields v. Judges' Retirement System of Illinois*, 204 Ill. 2d 488, 492 (2003)); see also *Business & Professional People for the Public Interest*, 136 Ill. 2d at 228 (less deference will be afforded the Commission when its decision is a departure from the Commission's past practice). Lastly, we are not bound to accept the Commission's conclusions regarding its jurisdiction. *Peoples Gas Light & Coke Co. v. Illinois Commerce Comm'n*, 222 Ill. App. 3d 738, 743 (1991). Accordingly, while we will consider the Commission's interpretation of section 200.220 in this case, we remain free to reject that interpretation if it is unreasonable or otherwise erroneous. *AT&T Teleholdings, Inc.*, 2012 IL App (1st) 113053, ¶ 32. We now turn to address whether the Commission's April 9, 2013, order was a nonappealable "declaratory ruling" requested by an "affected person" under section 200.220(a)(1).

¶ 31    Securus argues the broad language of the Commission's order, as well as the March 6, 2013, public colloquy between a commissioner and the ALJ, establishes the order was intended to establish a generally applicable Commission policy. Securus contends section 200.220 does not authorize the Commission to issue industry-wide conclusions regarding policy or practices in the context of a declaratory ruling. Instead, Securus argues section 10-101 of the Public Utilities Act governs and provides in part:

> "Any proceeding intended to lead to the establishment of policies, practices, rules or programs applicable to more than one utility may, in the Commission's discretion, be conducted pursuant to either rulemaking or contested case provisions, provided such choice is clearly indicated at the beginning of such proceeding and subsequently adhered to." 220 ILCS 5/10-101 (West 2012).

See also 5 ILCS 100/1-70(ii) (West 2012) (a "rule" does not include "informal advisory rulings issued under Section 5-150" of the Administrative Procedure Act). Thus, Securus argues, the Commission cannot establish a generally applicable policy regarding inmate pay telephone services in an order styled as a declaratory ruling. In response, the Commission asserts its ruling is a declaratory ruling because it applies only to Consolidated and any references to "an entity" in the order are limited to Consolidated offering the services set forth in Consolidated's verified petition for a declaratory ruling.

¶ 32    Securus also maintains Consolidated is not an "affected person" entitled to a declaratory ruling. Securus argues that Consolidated's interest in the existing contract for inmate telephone services is moot, as Consolidated no longer provided the services at issue and Consolidated's lawsuit regarding the contract was dismissed by the circuit court of Sangamon County. Securus further argues that Consolidated's assertion that it would like to know whether "in the future" charging rates higher than those provided in Part 770 would be a violation of the Commission's regulations does not establish Consolidated is an affected person. In response to these arguments, the Commission contends Consolidated is an affected person, based on the rejection of Consolidated's contract bid, the ongoing litigation in Sangamon County, and Consolidated's request for guidance regarding future contract bids.

¶ 33    Neither section 5-150(a) of the Administrative Procedure Act nor section 200.220 of the Rules of Practice for the Commission defines the term "declaratory ruling," and section 200.220 does not define who is an "affected person." Accordingly, we resort to basic

principles of judicial interpretation. Administrative regulations are construed according to the same standards that govern the construction of statutes; accordingly, the best indicator of the agency's intent is found in the plain, ordinary and popularly understood meaning of the language of the regulation. See *People v. Hanna*, 207 Ill. 2d 486, 497-98 (2003). In this regard, we note section 2-701(a) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-701(a) (West 2010)) provides that a court "may, in cases of actual controversy, make binding declarations of rights *** of the rights of the parties interested." "By the very terms of the statute, a declaratory judgment action may not be maintained unless and until an actual controversy exists ***." *Great West Casualty Co. v. Cote*, 365 Ill. App. 3d 100, 105 (2006). An actual controversy is one of the essential elements of an action for declaratory relief. See *Beahringer v. Page*, 204 Ill. 2d 363, 372 (2003). "As used in this phrase, 'actual' does not mean that a wrong must have been committed and an injury inflicted; rather, the term requires a showing that the underlying facts and issues of the case are not moot or premature with the result that a court passes judgment upon mere abstract propositions of law, renders an advisory opinion, or gives legal advice concerning future events." *Messenger v. Edgar*, 157 Ill. 2d 162, 170 (1993). It is also generally understood that a party seeking declaratory relief be "interested" in the controversy. *Pekin Insurance Co. v. Cincinnati Insurance Co.*, 157 Ill. App. 3d 404, 406 (1987). " '[I]nterested' does not mean merely having a curiosity about or a concern for the outcome of the controversy [citation]; rather, the party requesting the declaration must possess a personal claim, status, or right that is capable of being affected by the grant of such relief [citation]." *Messenger v. Edgar*, 157 Ill. 2d at 171.

¶ 34       The Commission has relied on these basic principles regarding declaratory relief in its interpretation of section 200.220(a). Section 200.220 requires a requester of a declaratory ruling provide a clear and concise statement of the "controversy or uncertainty" prompting the request. 83 Ill. Adm. Code 200.220 (1996). Moreover, in *Illinois Industrial Energy Consumers' Request for Declaratory Ruling Pursuant to 200.220 re: Section 16-102 of an Act Entitled "Electric Service Customer Choice and Rate Relief Law of 1997,"* Ill. Com. Comm'n No. 98-0607 (Mar. 10, 1999) (*Consumers' Request*), the Commission was asked to clarify the meaning of a provision of the Public Utilities Act, but the Commission concluded it had "no authority to declare what a particular statute means in some abstract sense." The Commission concluded that the " 'controversy or uncertainty' " embodied in section 200.220 "must be sufficiently immediate or ripe to enable [the Commission] to evaluate and resolve the matter with a declaratory ruling." *Id.* (citing *Weber v. St. Paul Fire & Marine Insurance Co.*, 251 Ill. App. 3d 371 (1993)). The Commission also determined the requesters' allegations failed to establish the requesters were "affected" persons or constituted "a full disclosure of the requester's *interest*." (Emphasis added.) *Id.*; see 83 Ill. Adm. Code 200.220(b)(1) (1996). Given the requirement that an "affected person" set forth an actual "controversy or uncertainty," petitions for declaratory relief must establish the issues of the case are not moot or premature. See *Consumers' Request*, Ill. Commerce Comm'n, No. 98-0607; *Continental Casualty Co. v. Howard Hoffman & Associates*, 2011 IL App (1st) 100957, ¶ 19. It is central to the purpose of a proceeding for declaratory relief that it allow the decision-making body to take hold of a controversy one step sooner than normally, *i.e.*, after the dispute has arisen, but before steps are taken which give rise to claims for damages or other relief. See *Kaske v. City of Rockford*, 96 Ill. 2d 298, 306 (1983); see also *Beahringer*, 204 Ill. 2d at 372-73.

¶ 35    Moreover, in *Resource Technology Corp. v. Commonwealth Edison Co.*, 343 Ill. App. 3d 36 (2003), this court addressed the issue of whether a Commission order was a declaratory ruling, as well as whether the order was sought by an affected person. This court first observed Illinois case law and Commission actions did not offer much guidance on the types of issues that are appropriate subjects for a declaratory ruling, as section 200.220 of the Commission's Rules of Practice was not promulgated by the Commission until 1996. *Id*. at 43. We noted the Commission declined to issue a declaratory ruling in *Consumers' Request* because the Commission concluded it had " 'no authority to declare what a particular statute means in some abstract sense.' " *Id*. at 44.

¶ 36    The *Resource Technology Corp.* court rejected a broad interpretation of section 200.220 urged by the Commission and petitioner Commonwealth Edison (ComEd), reasoning one could argue for a declaratory ruling each time the Commission makes a decision concerning the Public Utilities Act, as almost everything the Commission does involves the applicability of the statute. *Id*. Accordingly, this court determined that whether the order was a declaratory ruling must be determined by examining the substance of ComEd's petition. *Id*.

¶ 37    Turning to the substance of ComEd's petition, the *Resource Technology Corp.* court observed that while ComEd's petition was "dressed up in language that sought the Commission's view of statutory application," the petition actually sought to have the Commission interpret a 1997 order governing the relationship between ComEd and Resources Technology Corp. (RTC). *Id*. The court also observed "[t]he 'affected person' was not ComEd, but RTC." *Id*. RTC was an intervenor in the proceedings on ComEd's petition for a declaratory ruling. *Id*. at 41. Accordingly, the court concluded the Commission's order was not a declaratory ruling within the meaning of section 200.220 and denied the Commission's motion to dismiss the appeal. *Id*. at 44.

¶ 38    In this case, as in *Resource Technology Corp.*, we must determine whether the Commission's order at issue is a declaratory ruling by examining the substance of Consolidated's petition. See *id*. In its petition for a declaratory ruling, Consolidated alleged an actual controversy existed, based on the fact that Consolidated submitted a bid to CMS for an inmate services calling contract, which was not accepted. Consolidated also relied upon the CPO's rejection of Consolidated's bid protest regarding the contract award. Consolidated's petition did not refer to the lawsuit it subsequently filed in the circuit court of Sangamon County.

¶ 39    Consolidated's petition for a declaratory ruling is contrary to the central purpose of seeking declaratory relief. At the time of its filing, steps had already been taken which allegedly gave rise to claims for damages or other relief. See *Kaske*, 96 Ill. 2d at 306. Consolidated's petition sought a declaratory ruling regarding the application of a regulation to a contract bidding process which had already terminated. Indeed, after losing its bid protest, Consolidated filed a claim for damages or other relief. In this most basic sense, Consolidated's petition for a declaratory ruling is obviously untimely, as it sought a ruling regarding a course of action Consolidated had already undertaken. Thus, regarding the submission of the bid to CMS, any actual controversy or uncertainty is moot. See *Continental Casualty Co.*, 2011 IL App (1st) 100957, ¶ 19.

¶ 40    Consolidated also alleged in its petition that an actual controversy existed because it needed to know "whether, in the future, it would be acting in violation of a Commission regulation if it were to charge higher rates than those established pursuant to § 770.40(c) and

(e) to members of the public in connection with the provision of the inmate telephone calling services described" in the petition. The record establishes Consolidated is no longer providing the services described in its petition. Moreover, Consolidated's petition fails to identify any immediate or concrete set of facts regarding the future provision of these services. Furthermore, the specific nature, terms, and conditions of the telephone services IDOC may seek to provide to inmates pursuant to future contracts is also unknown. Consequently, it is unknown whether Consolidated would be successful in any future bid process. Accordingly, Consolidated's petition can only be construed as seeking an abstract opinion on the applicability of the existing regulations under some set of unknown future circumstances. Consolidated's claim to be an affected person thus presents precisely the type of abstract and conjectural interest the Commission rejected in *Consumers' Request*.

¶ 41 The Commission concluded Consolidated was an affected person in part because of pending litigation brought by Consolidated as to the contract award. Although not alleged in the petition for a declaratory ruling, Consolidated's reply to Securus further relied upon the fact that the award of the contract is the subject of ongoing litigation. On this point, we note Consolidated and the Commission staff initially took the position in these proceedings that the litigation in the circuit court of Sangamon County was immaterial or irrelevant to Consolidated's statement of its interest in the petition for a declaratory ruling. Securus argued it was improper for Consolidated to file its verified petition for the purpose of advancing Consolidated's position in the litigation. Thus, in this case, only the Commission concluded the litigation was material and a basis to conclude Consolidated was an "affected person" under section 200.220. The Commission's order, however, contains no explanation for this conclusion.

¶ 42 More significantly, the Commission's conclusion in this respect is inexplicable, given our decision in *Resource Technology Corp.* The Commission attempts to distinguish *Resource Technology Corp.* as a case where the Commission was interpreting a prior order governing the relationship between ComEd and RTC, rather than issuing a declaratory ruling. See *Resource Technology Corp.*, 343 Ill. App. 3d at 44. Similar to *Resource Technology Corp.*, however, Consolidated has requested a declaratory ruling after litigation has commenced in another forum, contrary to the basic point of seeking a declaratory ruling. See *Kaske*, 96 Ill. 2d at 306. In addition, as in *Resource Technology Corp.*, the actual "affected person" in this case would be the intervenor and successful bidder, Securus. See *Resource Technology Corp.*, 343 Ill. App. 3d at 44. Accordingly, we conclude *Resource Technology Corp.* is applicable to this case.

¶ 43 In addition, Consolidated's lawsuit was dismissed by the circuit court of Sangamon County based on Consolidated's lack of standing to sue and the doctrine of sovereign immunity. These issues are issues unrelated to the subject of Consolidated's petition and the Commission's order. Thus, even assuming for the sake of argument that the dismissal was reversed on appeal, the effect of a declaratory ruling upon the litigation–if any–is unknown, as the record on appeal does not describe all of the issues which may be involved in the litigation. It is also unclear whether a declaratory ruling issued after the contract was already awarded to Securus would affect the outcome of the litigation. There is no indication in this record that the Commission's order would have any effect on the ongoing litigation. Thus, Consolidated's supposed interest in obtaining a declaratory ruling based on pending litigation ultimately is hypothetical or conjectural.

¶ 44    In short, Consolidated's allegations regarding the submission of its contract bid do not establish an actual controversy because that controversy is moot. Consolidated's allegations regarding its possible future activities are too abstract and hypothetical to constitute a full statement of the requester's interest. Neither Consolidated nor the Commission established the ongoing litigation in Sangamon County would be affected by the Commission's order. Accordingly, for all of the aforementioned reasons, we conclude the Commission's order in this case was not a declaratory ruling, as the party requesting the order was not an affected person and there was no controversy or uncertainty within the meaning of section 200.220 of the Commission's regulations. Accordingly, the Commission's order is not a nonreviewable declaratory ruling under section 200.220(i). See *Resource Technology Corp.*, 343 Ill. App. 3d at 44.

¶ 45    Our resolution of the jurisdictional question, however, is decisive on the merits of the propriety of the Commission's order. In evaluating the propriety of an order issued by the Commission, our scope of review is governed by section 10-201 of the Public Utilities Act (see 220 ILCS 5/10-201 (West 2012)). Section 10-201 provides in relevant part that a reviewing court shall reverse a Commission's order or decision, in whole or in part, if it finds that: (a) the findings of the Commission were not supported by substantial evidence based on the entire record of evidence presented to or before the Commission for and against such order or decision; (b) the order or decision was without the jurisdiction of the Commission; (c) the order or decision was in violation of the state or federal constitution or laws; or (d) the proceedings or manner by which the Commission considered and entered its order or decision were in violation of the state or federal constitution or laws, to the prejudice of the appellant. 220 ILCS 5/10-201(e)(iv) (West 2012).

¶ 46    In this case, based on our foregoing analysis, the decisive issue is whether the Commission's ruling was made outside the jurisdiction of the Commission. " 'The term "jurisdiction," while not strictly applicable to an administrative body, may be employed to designate the authority of the administrative body to act ***.' " *Business & Professional People for the Public Interest*, 136 Ill. 2d at 243 (quoting *Newkirk v. Bigard*, 109 Ill. 2d 28, 36 (1985)). As our supreme court has stated:

> "[I]n administrative law, the term 'jurisdiction' has three aspects: (1) personal jurisdiction–the agency's authority over the parties and intervenors involved in the proceedings, (2) subject matter jurisdiction–the agency's power 'to hear and determine causes of the general class of cases to which the particular case belongs' [citation], and (3) an agency's scope of authority under the statutes." *Id*.

"Consequently, to the extent an agency acts outside its statutory authority, it acts without jurisdiction." *Id*. Thus, for example, this court vacated portions of a Commission order which constituted a declaratory ruling prior to the promulgation of section 200.220. See *Harrisonville Telephone Co. v. Illinois Commerce Comm'n*, 176 Ill. App. 3d 389, 393 (1988).

¶ 47    The Commission purported to act pursuant to section 5-150(a) of the Administrative Procedure Act and section 200.220 of the Commission's Rules of Practice, which empower the Commission to issue declaratory rulings. As previously noted, when requested by an affected person, the Commission may issue a declaratory ruling where there is a clearly stated controversy or uncertainty. For the reasons already stated, Consolidated was not an "affected person" entitled to request a declaratory ruling from the Commission and Consolidated failed to clearly state an actual controversy or uncertainty. Thus, we conclude

- 13 -

the Commission's order was outside the Commission's authority under the Administrative Procedure Act and the Commission's own implementing regulation. See *Harrisonville Telephone Co.*, 176 Ill. App. 3d at 393. Accordingly, the Commission's order must be vacated. Moreover, as the Commission lacked jurisdiction to enter the order at issue in this case, we need not address the merits of the Commission's ruling as this court was required to do in *Resource Technology Corp.*

¶ 48                                         CONCLUSION

¶ 49        For all of the aforementioned reasons, the Commission's April 9, 2013, order is vacated. The Commission's May 1, 2013, order denying rehearing is similarly vacated.

¶ 50        Vacated.